JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Debra Milano

## DEFENDANTS

IKEA Holding US, Inc. d/b/a IKEA, IKEA US Retail, LLC d/b/a IKEA, IKEA North America Services, LLC D/b/a IKEA

**(b)** County of Residence of First Listed Plaintiff   Bergen
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian C. Farrell, Esquire, Console Mattiacci Law, LLC, 1525 Locust Street, 9th Floor, Philadelphia, PA 19102 (215) 545-7676

Attorneys *(If Known)*
Paul Lancaster Adams, Esquire, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 1735 Market Street, Suite 3000, Philadelphia, PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | Act of 2016 | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Plaintiff brings this action for unlawful age discrimination under N.J.S.A. 10:5-1, et seq. ("NJLAD").

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In excess of $150,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Honorable Anita B. Brody   DOCKET NUMBER   18-599; 19-723; 19-1286; 20-5556

DATE   12/15/2020    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Debra Milano | : | CIVIL ACTION |
| v. | : | |
| IKEA HOLDING US, INC. d/b/a IKEA, *et al.* | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
  and Human Services denying plaintiff Social Security Benefits.            ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
  exposure to asbestos.                              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
  commonly referred to as complex and that need special or intense management by
  the court.  (See reverse side of this form for a detailed explanation of special
  management cases.)                               ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( x )

| | | |
|---|---|---|
| 12/15/2020 | | Plaintiff, Debra Milano |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2851 | farrell@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Ridgefield, NJ 07657 _____

Address of Defendant: _____ 420 Alan Wood Road, Conshohocken, PA 19428 _____

Place of Accident, Incident or Transaction: _____ Conshohocken, PA 19428 _____

---

**RELATED CASE, IF ANY:**

Case Number: 18-599; 19-723; 19-1286; 20-5556    Judge: Honorable Anita B. Brody    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☑    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/15/2020    _____    319145
    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**    *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify): _____*

**B.**    *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify): _____*
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Brian C. Farrell _____, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[X] Relief other than monetary damages is sought.

DATE: 12/15/2020    _____    319145
    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA MILANO** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. ___** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| **IKEA HOLDING US, INC.** | : | |
| **d/b/a IKEA** | : | |
| | : | |
| **IKEA US RETAIL, LLC** | : | |
| **d/b/a IKEA** | : | |
| | : | |
| **and** | : | |
| | : | |
| **IKEA NORTH AMERICA SERVICES, LLC** | : | |
| **d/b/a IKEA** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## COMPLAINT

### I.     PRELIMINARY STATEMENT.

Plaintiff, Debra Milano ("Plaintiff Milano"), brings this age discrimination action against

her employer,  IKEA Holding US, Inc. d/b/a IKEA, IKEA US Retail, LLC d/b/a IKEA, and

IKEA North America Services, LLC d/b/a IKEA (collectively, "IKEA US" or "Defendants").

The IKEA Group is a multinational company that openly expresses a preference in favor

of young employees as the company's future leaders, including in its operations in the United

States.  IKEA US openly and publicly violates US law prohibiting age discrimination, has a

corporate culture of age discrimination, and has engaged in a company-wide pattern and practice

of age discrimination against its older employees, including Plaintiff Milano.

1

Plaintiff Milano is a current employee of IKEA US who has been adversely affected by IKEA US's pattern and practice of age discrimination.  She has repeatedly applied for open and available positions for which she has been well qualified, and repeatedly rejected in favor of substantially younger applicants.  Plaintiff Milano has opted in to join two of the ADEA representative collective actions against IKEA now pending in this Court.  In this lawsuit, Plaintiff Milano asserts claims under state law with respect to rejections for promotion that are, upon information and belief, the basis for her eligibility to participate as an opt-in plaintiff in those cases.

Plaintiff Milano seeks injunctive and declaratory relief against IKEA US to address its age discriminatory policies and practices, as well as damages against IKEA US for harm she has suffered as a result of the age discrimination alleged herein.

## II.    PARTIES.

1.     Plaintiff, Debra Milano, is an individual and citizen of the state of New Jersey, residing therein in Ridgefield, New Jersey, 07657.

2.     Plaintiff Milano was born in September 1956, and is currently 64 years old.

3.     Plaintiff Milano is a current IKEA US employee who works at the IKEA store located in Paramus, New Jersey.

4.     In addition to bringing the instant action against IKEA US, Plaintiff Milano has filed a Consent to Join as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc., et al.*  (E.D. Pa. 2:19-cv-01286 (AB)).

5.     "IKEA" is a multinational company that presents and promotes itself publicly as a centrally controlled entity known as the "IKEA Group."

6.     The IKEA Group operates in the United States through various owned and controlled subsidiary entities all of which do business as and present themselves as "IKEA," including, without limitation, Defendants IKEA Holding US, Inc., IKEA US Retail, LLC, and IKEA North America Services, LLC.

7.     Defendant IKEA Holding US, Inc. is a Delaware corporation with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

8.     Defendant IKEA Holding US, Inc., through its subsidiary entities, owns defendant IKEA US Retail, LLC, and its subsidiary, IKEA North America Services, LLC.

9.     Defendant IKEA US Retail, LLC is a limited liability company with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

10.    Defendant IKEA North America Services, LLC is a limited liability company with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

11.    Defendant IKEA North America Services, LLC is a subsidiary of Defendant IKEA US Retail, LLC.  IKEA US Retail, LLC's sole member is IKEA Property, Inc.  IKEA Property, Inc. is a Delaware corporation with a principal place of business in Conshohocken, Pennsylvania.

12.    Defendants share common ownership, management, human resources and employment policies.

13.    The IKEA Group, through its various owned and controlled subsidiary companies, including Defendants, holds itself out to the public and its employees in the United States as one company.

14.    IKEA US is interconnected such that the entities that comprise it are considered a "single" and/or "integrated" employer, and/or "joint" employer.

15.     Defendants are alter-egos of each other, IKEA US and/or the IKEA Group.

16.     Defendants are interconnected such that each entity, individually or collectively, contributed to, caused and/or is responsible for the age discrimination alleged herein.

17.     IKEA US employs over 15,000 people.

18.     At all times material hereto, Defendants, individually and/or collectively, have been engaged in an industry affecting interstate commerce and have acted as an "employer" within the meaning of the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD").

19.     At all times material hereto, Defendants, individually and/or collectively, employed more than twenty (20) people.

20.     At all times material hereto, Defendants, individually and/or collectively, acted by and through their authorized agents, servants, and/or employees within the course and scope of their employment with Defendants and in furtherance of the business of Defendants.

21.     At all times material hereto, Plaintiff Milano has been an employee of Defendants, individually and/or collectively, within the meaning of the NJLAD.

## III.    JURISDICTION AND VENUE.

22.     Plaintiff Milano alleges causes of action arising under the NJLAD.

23.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

24.     The District Court has jurisdiction over Plaintiff Milano's claims pursuant to 28 U.S.C. §1332 because Plaintiff Milano is a citizen of the state of New Jersey and each defendant is not, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

25.     The District Court has personal jurisdiction over Defendant IKEA US Retail, LLC because, *inter alia,* Defendant IKEA US Retail, LLC maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

26.     The District Court has personal jurisdiction over Defendant IKEA North America Services, LLC because, *inter alia,* Defendant IKEA North America Services, LLC maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

27.     The District Court has personal jurisdiction over Defendant IKEA Holding US, Inc. because, *inter alia,* Defendant IKEA Holding US, Inc. maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

28.     Venue is proper under 28 U.S.C. § 1391(b) because, without limitation, Defendants are residents in this judicial district and/or a substantial part of the events giving rise to Plaintiff Milano's claims occurred in this judicial district.

**IV.    FACTUAL ALLEGATIONS SUPPORTING CLAIMS.**

### *IKEA US's Policy of Favoring Younger Employees*
### *and its Pattern and Practice of Age Discrimination*

29.    The IKEA Group is a multinational company that has a corporate culture of age bias.

30.    The IKEA Group openly expresses a preference in favor of young employees as the future leaders of the company.

31.    The IKEA Group has, among other things, directed IKEA US to set age-biased personnel goals for management level employees.

32.    The IKEA Group has, among other things, directed IKEA US to consider age in its employment decisions.

33.    The IKEA Group has, among other things, directed IKEA US to prefer younger individuals in management positions.

34.    The IKEA Group owns and controls IKEA US.

35.    IKEA US maintains headquarters that are located in Conshohocken, Pennsylvania.

36.    IKEA US refers to its U.S. headquarters as the "Service Office."

37.    Upon information and belief, the Service Office is staffed by employees who receive their W-2 forms from defendant North America Services, LLC, but whose areas of responsibility cover the entirety of IKEA US.

38.    IKEA US utilizes centralized human resources and employment policies and strategies that are promulgated in and disseminated from the Service Office in Conshohocken, Pennsylvania.

39.     IKEA US's centralized human resources, personnel and employment policies and strategies are implemented in connection with the job application/selection for promotion process through, among things, the involvement of its internal recruiters.   Among other things, the recruiters pre-screen applicants, interview candidates, make recommendations, and finally approve successful candidates for promotion.

40.     Upon information and belief, IKEA US asks all employees to indicate their willingness to relocate, and the recruiters consider same in screening applicants for all positions.

41.     Upon information and belief, IKEA US has a practice of closing and then re-posting job opportunities under a different requisition number and with relocation support in an effort to attract younger candidates.

42.     Upon information and belief, IKEA US has a practice of closing and then re-posting job opportunities under a different requisition number without relocation support in an effort to dissuade older candidates.

43.     IKEA US has a corporate culture of age bias.

44.     IKEA US has had in place a goal to create a younger management base.

45.     IKEA US has had in place a long-term strategy of having young people in management positions.

46.     IKEA US has had in place a policy to favor young employees in management positions.

47.     IKEA US openly expresses a preference in favor of young employees as the future leaders of the company.

48.     IKEA US has set age-biased personnel goals for management level employees.

49.     IKEA US considers age in its employment decisions and favors younger employees when making promotions decisions and selecting individuals for management positions.

50.     Age bias from the top-down infuses and infects the employment decision-making process throughout the entirety of IKEA US.

51.     IKEA US has engaged in systemic age discrimination against its older employees.

52.     IKEA US has engaged in a pattern and practice of age discrimination.  Without limitation:

a.  IKEA US has had in place long term goals to have a younger management base and a certain number of younger individuals in management level positions.  Every IKEA US store was directed that if it lost a member of its Store Steering Group, it was to fill the position with someone younger than 35.  Specific goals of having a certain number of younger employees in management positions were stated in writing by the US Strategic Human Resources Committee and communicated to every store throughout the United States.  The goals have been spoken of and communicated in different ways, such as in terms of "age distribution goals," "succession," "potential" or "diversity."

b.  IKEA US has tracked, monitored and reported on its age-biased personnel goals.

c.  IKEA US has had in place a long-term strategy for recruiting and promoting younger people into management positions.

d.  IKEA US has had in place leadership development programs as part of a strategy to advance young employees into management positions.

e.  IKEA US has had in place a policy of identifying the "potential" of its employees as a proxy to assess promotability in an age-biased manner.

f.  IKEA US has undertaken recruiting efforts aimed at recruiting young individuals into management positions.

g.  IKEA US has implemented "reorganization" efforts, including one entitled "Organization for Growth" (a/k/a "04G"), to eliminate older employees from management positions by, without limitation, terminating them, demoting them, or effectively forcing them out.

h. IKEA US has had a promotions policy and/or practice that calls for the consideration of data on internal applicants for management positions, including their age.

i. IKEA US has had a job selection process by which older qualified applicants seeking promotion are rejected without due consideration.

j. IKEA US has had a job selection process by which older qualified applicants seeking promotion are precluded from consideration in favor of younger applicants.

k. IKEA US subjects internal (generally older) applicants to requirements not imposed upon external (generally younger) applicants.

l. IKEA US managers openly express age bias in favor of younger employees.

m. IKEA US fails to remediate complaints of age discrimination, and thus promotes a culture in which discrimination against older employees is tolerated and encouraged.

n. IKEA US has had in place programs explicitly aimed at promoting "young" talent and/or "young" potentials.

o. IKEA US has expressly stated to all of its employees – including decision-makers, applicants, potential applicants, and those charged with complying with its stated anti-discrimination policies – that it is "looking for young talents."

p. IKEA US openly flouts the ADEA by, without limitation, publicizing advertisements expressing a preference for "young" candidates, such as for its "Global Young Potentials Program."

q. IKEA US considers willingness to relocate when screening candidates for all positions, including those that would not entail relocation, with the intention of discouraging applications from and/or eliminating from consideration its older employees.  Further, to the extent that a relocation requirement does not discourage or eliminate older applicants, IKEA US may rescind offers of domestic relocation assistance to dissuade older applicants.  Similarly, IKEA US will close a position, and repost it to offer relocation assistance in order to attract younger candidates.

r. IKEA US conducts sham interviews of older employees to provide a cover or plausible deniability for age discrimination.

s. IKEA US has engaged in deceptive practices to try to conceal the effects of its age discrimination.  For example, and without limitation, managers select

younger employees for positions that are not officially posted and recorded in the company's data, and the company sometimes "closes" certain job postings and then "re-posts" them under different requisition numbers.

t.  IKEA US has engaged in deceptive practices to try to avoid the consequences of its age discrimination.  For example, and without limitation, through O4G, employees were assigned "new" roles within the company. These "new" roles guaranteed base pay protection for IKEA employees through December 31, 2018. However, following December 31, 2018, if the "new" assigned position came with a lower pay grade, the employees pay would then be reduced accordingly. Upon information and belief, this was a scheme intended to harm older employees by removing them from management positions while lulling and/or deceiving them into foregoing their rights to pursue age discrimination claims past the 300-day federal charge filing deadlines.

u.  IKEA US instructs its Human Resources and recruiting managers to consider age in making employment decisions.

v.  IKEA US, under the guise of "diversity," sets goals to have younger employees in management positions and/or promotes age "balance" in the workforce.

w.  IKEA US intentionally fails to promote older employees because of their age.

x.  IKEA US fails to promote older employees because of their age.

53.  Since February 12, 2018, several current or former employees of IKEA US have filed age discrimination lawsuits against Defendants in the United States District Courts, alleging, among other things, that IKEA operating in the US considers age in its employment decisions and acts upon its openly expressed preference in favor of younger employees to the detriment of its older employees.  The captions of these lawsuits are as follows:

a.  *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. No. 2:18-cv-00599-AB) (Feb. 12, 2018);

b.  *Parker v. IKEA North America Services, LLC* (E.D. Pa. 2:18-cv-03261-AB) (Aug. 1, 2018);

c.  *Gorbeck v. IKEA North America Services, LLC, et al.* (E.D. Pa. 2:18-cv-00599-AB) (Aug. 27, 2018);

10

    d.   *Nasci v. IKEA North America Services, LLC* (W.D. Pa. 2:18-cv-01643-CB) (Dec. 10, 2018);

    e.   *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 -AB)(Feb. 21, 2019);

    f.   *Antonelli, Jr. v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-01286-AB) (March 27, 2019); and

    g.   *Branson, et al. v. IKEA Holding US, Inc., et al*. (E.D. Pa. 2:20-cv-05556-AB)(Nov. 6, 2020).

54.    The *Donofrio, Antonelli*, and *Paine* cases are ADEA representative collective actions that have been conditionally certified by this Court and are now pending.

55.    In its May 15, 2019 memorandum accompanying its order to conditionally certify *Donofrio* (2:18-cv-00599 at ECF 70), the Court stated, among other things:

- "Donofrio has put forth testimonial evidence that IKEA employees that were tasked with promotion decision-making were aware of and took into consideration what they perceived to be a broad organizational preference for the promotion of young employees to management positions." *Id.* at p. 6.

- "Donofrio also presents evidence that IKEA tracked the ages of its management personnel beginning in 2012 and continuing thereafter." *Id.* at p. 7.

- "…Donofrio presents evidence to substantiate his allegation that IKEA had a potentially discriminatory 'succession planning' policy in relation to promotion decision-making." *Id.*

- "Donofrio also presents evidence that IKEA used 'potential' ratings as a proxy for age-based assessments of promotability." *Id.* at p. 8.

- "…Donofrio presents evidence that IKEA's policies had a nationwide scope…" *Id.*

56.    IKEA US has taken no steps to address its age discriminatory policies and practices as alleged and substantiated in *Donofrio* or otherwise.

57.    IKEA US has continued its age discriminatory policies and practices as alleged and substantiated in *Donofrio* or otherwise.

58.    For example, and without limitation, IKEA US has not changed its "Promotions & Transfer" policy; IKEA US continues to express a broad organizational preference for the promotion of young employees into management position that decision-makers are aware of and consider in selection decisions; IKEA US continues to track the ages of its management personnel; IKEA US continues to engage in age discriminatory succession planning with the intention of building a "bench" or "pipeline" of young employees as future leaders; IKEA US continues to use "potential" as a proxy for age-biased assessments of promotability; IKEA US continues its efforts to attract young candidates by, for example, advertising on its Intranet that it is looking for "fresh" talent; and IKEA US continues to unlawfully consider age in its employment decisions under the guise of "diversity."

59.    IKEA US's employment policies and/or practices are infected with age bias from the top down and infuse all aspects of its employment decisions.

60.    IKEA US's policies infected with age bias, its corporate culture of age bias, its open expression of considering age in employment decisions, and/or its openly expressed preference for developing and/or selecting younger employees as its future leaders, affect the employment decisions made by IKEA US and adversely affects IKEA US's older employees, including Plaintiff Milano.

61.    Since the time periods at issue in *Donofrio, Antonelli* and *Paine*, IKEA US has continued to engage in a pattern and practice of age discrimination, including its general and pervasive corporate policy of preferring young candidates for promotion, that has adversely affected its older employees, including Plaintiff Milano.

62.    Since the time periods at issue in *Donofrio, Antonelli* and *Paine*, IKEA US has rejected for promotion older employees, including Plaintiff Milano, because of their age.

63.     Since the time periods at issue in *Donofrio, Antonelli* and *Paine*, IKEA US has intentionally discriminated against Plaintiff Milano because of her age.

64.     In the alternative, since the time periods at issue in *Donofrio, Antonelli* and *Paine*, to the extent that Defendants' facially neutral employment policies and practices have not been used by Defendants to discriminate intentionally, the continued use of one or more of each has resulted in a disparate impact against older employees, including Plaintiff Milano, as follows:

   a.   Upon information and belief, Defendants' assessment and identification of the potential of its employees has resulted in a statistically significant disparity in the promotion rates of its older employees.

   b.   Upon information and belief, Defendants' policies regarding relocation have resulted in a statistically significant disparity in the promotion rates of its older employees.

## **Plaintiff Debra Milano**

65.     IKEA US hired Plaintiff Milano on or about June 21, 2003, as a Sales Co-worker to work in Defendants' Paramus, New Jersey store.

66.     Throughout her employment with IKEA US, Plaintiff Milano has consistently demonstrated positive performance and has performed her duties in a highly competent manner. For example, and without limitation, she has received positive performance reviews and has been awarded with merit-based pay increases consistently since 2010.

67.     Defendants' pattern and practice of age discrimination, including its general and pervasive corporate policy of preferring younger candidates for promotion, has adversely affected Plaintiff Milano's advancement in the company.

68.     Plaintiff Milano several times applied for promotion to positions for which she was qualified but has been rejected because of her age.  Without limitation:

     a.   In or about February 2018, Plaintiff Milano, at age 61, applied for promotion to the Active Selling Leader position in the Paramus, New Jersey store. Notwithstanding her qualifications, Defendants rejected Plaintiff Milano's application and selected for the position Noel Diaz (age 27).

     b.   In or about February 2019, Plaintiff Milano, at age 62, applied for promotion to two open and available Leader positions in Defendants' Paramus, New Jersey store. Defendants rejected Plaintiff Milano's application and selected for the positions two substantially younger applicants.

69.    Upon information and belief, Defendants' rejection of Plaintiff Milano for promotion to one or more of the positions identified in Paragraph 68 is the basis for Plaintiff Milano's eligibility to participate as an opt-in plaintiff in *Paine v. IKEA Holding US, Inc., et al.* (E.D. Pa. 2:19-cv-00723 (AB)), and *Antonelli v. IKEA Holding US, Inc.* (E.D. Pa. 2:19-cv-01286 (AB)).

70.    Plaintiff Milano's claims with respect to Defendants' rejection in 2019 of her application for the open and available positions in Paramus, as set forth herein, are timely under the NJLAD.

71.    In this lawsuit, Plaintiff Milano seeks all remedies available to her under the NJLAD for Defendants' 2019 rejections of her applications that are not otherwise available to her as an opt-in plaintiff in the representative collective actions.

72.    Defendants have not addressed or remediated IKEA's age discrimination as alleged in the representative actions lawsuits brought against the company. On the contrary, IKEA US has continued its pattern and practice of age discrimination, including its policy of preferring younger candidates for promotion, to the detriment of Plaintiff Milano.

73.    Plaintiff Milano was qualified for the 2019 Team Leader positions for which she applied.

74.     In or about February 2019, Plaintiff Milano was interviewed over the phone and was told to wait to hear back from IKEA for an in-person interview for the Team Leader positions.

75.     Plaintiff Milano understood this directive to mean that she would be advanced through the hiring process to an in-person interview.

76.     IKEA did not conduct an in-person interview with Plaintiff Milano for either of the Team Leader positions.

77.     In or about February 2019, Plaintiff Milano learned that she had been rejected for the Team Leader positions.

78.     IKEA US selected for the Team Leader positions Janel Lugo (age 23) and Nicole Lobell (age 25).

79.     Plaintiff Milano was at least as, if not more, qualified than Ms. Lugo because of, without limitation, Plaintiff Milano's nearly fifteen (15) years of experience working with IKEA at the Paramus, New Jersey store.

80.     Plaintiff Milano was at least as, if not more, qualified than Ms. Lobell because of, without limitation, her experience.

81.     Defendants failed to promote Plaintiff Milano to the Team Leader positions because of her age.

82.     As a direct and proximate result of the age discriminatory and unlawful conduct of Defendants in failing to promote and rejecting Plaintiff Milano in 2019 for the Team Leader positions, Plaintiff Milano has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of

self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

83.     Defendants' conduct in failing to promote and rejecting Plaintiff Milano for the Team Leader positions was especially egregious.

84.     Members of upper management of Defendants had actual participation in, or willful indifference to, the unlawful acts of age discrimination alleged herein.

**COUNT I -**
**PLAINTIFF MILANO AGAINST DEFENDANTS**
**FOR AGE DISCRIMINATION IN VIOLATION OF THE NJLAD**

85.     Plaintiff Milano incorporates by reference paragraphs 1 through 84 of the Complaint as if fully set forth herein.

86.     Defendants, by their age discriminatory and unlawful conduct in failing to promote and rejecting Plaintiff Milano for each of the Team Leader positions, have violated the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.*

87.     Defendants' conduct warrants the imposition of punitive damages.

88.     Plaintiff Milano has in the past incurred, and may in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

89.     Plaintiff Milano is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff, Debra Milano, respectfully requests that this Court enter judgment in her favor and against Defendants, IKEA Holding US, Inc. d/b/a IKEA, IKEA US Retail, LLC d/b/a IKEA, and IKEA North America Services, LLC d/b/a IKEA, and issue an Order:

a.   declaring the acts, policies and practices complained of to be a violation of the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.*;

b.   enjoining and restraining permanently the violations alleged herein;

c.   awarding compensatory damages to Plaintiff Milano to make her whole for all past and future lost earnings, benefits, earnings capacity and other injuries which Plaintiff Milano has suffered and will continue to suffer as a result of Defendants' discriminatory conduct;

d.   awarding compensatory damages to Plaintiff Milano to make her whole for all past and future pain and suffering, emotional distress, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures that she has suffered and will continue to suffer as a result of Defendants' age discriminatory conduct;

e.   awarding punitive damages to Plaintiff Milano and against Defendants;

f.   awarding to Plaintiff Milano the costs of this action, together with reasonable attorney's fees;

g.   awarding Plaintiff Milano such other damages as are appropriate under the anti-discrimination law at issue herein;

h.     granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

BY:      <u>/s/ Brian C. Farrell</u>
                Stephen G. Console
                Laura C. Mattiacci
                Susan M. Saint-Antoine
                Brian C. Farrell
                Julie A. Uebler
                Colin A. Saltry
                1525 Locust Street, 9th Floor
                Philadelphia, PA  19102
                (215) 545-7676; (215) 565-2855 (fax)
                console@consolelaw.com
                mattiacci@consolelaw.com
                santanto@consolelaw.com
                farrell@consolelaw.com
                uebler@consolelaw.com
                saltry@consolelaw.com
                Attorneys for Plaintiff, Debra Milano

Dated: December 15, 2020